**TARTER KRINSKY & DROGIN LLP**
Laurent S. Drogin (LD 4770)
Jonathan E. Temchin (JT 7609)
ldrogin@tarterkrinsky.com
jtemchin@tarterkrinsky.com
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

**D. CLAY TAYLOR, P.A.**
D. Clay Taylor (*pro hac vice* to be applied for)
clay@replawyer.com
7300 Metro Blvd., Suite 350
Edina, MN 55439
(612) 904-7376

*Attorneys for Plaintiff*
*Supreme Showroom, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Supreme Showroom, Inc., an Illinois corporation, | Civil Action No. 1:16-cv-05211 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Branded Apparel Group LLC, d/b/a SXS Group LLC, a Delaware limited liability company, | *(Jury Trial Demanded)* |
| Defendant. | |

    ***COMES NOW,*** the Plaintiff, Supreme Showroom, Inc., for its complaint against Defendant, Branded Apparel Group LLC, d/b/a SXS Group LLC, stating and alleging as follows:

## THE PARTIES, JURISDICTION & VENUE.

    1.    Plaintiff, Supreme Showroom, Inc. ("Supreme Showroom"), is a corporation duly formed under the laws of the State of Illinois, with its principal place of business located at 688

North Milwaukee Ave, Chicago, Illinois, 60642. Supreme Showroom is in business as a commissioned independent sales representative selling the products of companies in the fashion apparel industry.

2. Defendant, Branded Apparel Group LLC, d/b/a SXS Group LLC ("SXS Group"), is a limited liability company duly formed under the laws of the State of Delaware, with its principal place of business located at 141 West 36th Street, New York, New York, 10018. SXS Group is in business of designing, importing, marketing and selling a variety of fashion apparel products, both private label and under various brand names such as SXS and SLATE & STONE. Defendant liability company is also registered to do business in the State of New York. Upon information and belief, all of the members of Defendant limited liability company are citizens of the State of New York, and none of its members are citizens of the State of Illinois.

3. Because at all times relevant to this complaint, SXS Group has maintained its principal place of business in this state and this district, and because Defendant is registered to do business in this state, the Court's exercise of personal jurisdiction, both specific and general, over the Defendant is proper.

4. Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, this Court has diversity subject matter jurisdiction, pursuant to 28 U.S.C. §1332(a).

5. Because at all times relevant to this complaint, SXS Group has been registered to do business in this state and district, and because it has maintained its principal place of business in this district, venue is proper pursuant to 28 U.S.C. §1391(b).

6. Plaintiff demands a jury trial on all counts, pursuant to Fed.R.Civ.P. 38.

## FACTS COMMON TO ALL COUNTS.

7. On or about June 18, 2013, SXS Group retained Supreme Showroom to work as its commissioned, independent sales representative in an exclusive territory of Upper Midwestern States comprised of Illinois, Wisconsin, Michigan, Indiana, Ohio, Missouri, Iowa, Minnesota, North Dakota, South Dakota, Nebraska and Kansas.

8. In addition, as part of its work for SXS Group, Supreme Showroom regularly traveled to New York to attend trade shows, markets and to meet with its customers, soliciting the sale of Defendant's products in the State of New York.

9. Initially, the terms of the parties' business relationship was governed by a written Sales Representative Agreement, which expired by its own terms on June 17, 2015. Thereafter, the parties' relationship continued under an unwritten commission agreement, wherein in exchange for its services, SXS Group agreed to pay Supreme Showroom a variable commission (either 8% or 12% of the value of net shipped goods) on all sales to customers in Plaintiff's territory. Commissions were due and payable in the month following Defendant's receipt of payment from retail store accounts. In addition, SXS Group promised to pay Supreme Showroom a $1000.00 monthly showroom fee for displaying its products at its Chicago showroom.

10. Over the years, Supreme Showroom has been very successful placing Defendant's products with its major store and specialty store accounts. This is demonstrated by the fact that in 2016, Supreme Showroom's sales of Defendant's products exceeded $4 Million at wholesale.

11. Unfortunately, beginning in 2015 SXS Group began to fall behind in its payment of commissions and showroom fees to Supreme Showroom. By the Spring 2016 season, SXS

Group had failed to pay Supreme Showroom earned commissions on over $1 Million in sales; these unpaid commissions and showroom fees totaled more than $125,000.00.

12. Throughout 2015 and 2016, Supreme Showroom made regular and consistent demands for payment of all overdue and unpaid commissions, and SXS Group's owners and senior management consistently and repeatedly promised that the arrearage would be paid. Based on these repeated promises, Supreme Showroom began the process of booking goods for the Fall 2016 selling season, which are set to ship to retail stores in the months of July through December 2016.

13. Unfortunately, contrary to Defendant's promises, through the Spring 2016 this commission and showroom fee arrearage continued to grow. Then without prior warning of any kind, in an effort to avoid paying this growing arrearage, on June 1, 2016 SXS Group immediately terminated Supreme Showroom as its independent sales representative, through a letter from Defendant's attorney.

14. At the time of termination, SXS Group owed Supreme commission (2015 and Spring 2016) and showroom fees exceeding $125,000.00. In addition, at the time of termination Supreme Showroom had confirmed orders from its customers for Fall 2016 totaling an additional $60,000.00, upon which it has earned commissions of an additional $7,200.00, which come due in the months of August through December 2016.

15. SXS Group has made it clear that it does not intend to pay Supreme Showroom any of these commissions or showroom fees. The total amount of said commissions and fees will likely total $155,000.00.

## COUNT I.
## BREACH OF CONTRACT.

16. Supreme Showroom reasserts each and every factual allegation stated in all prior complaint paragraphs, as if they were fully restated herein.

17. At all times a valid and enforceable contract existed between the parties, under the terms of which Defendant promised to pay Supreme Showroom a variable commission on all sales of its products to retail stores in its assigned territory.

18. By its failure and refusal to pay Supreme Showroom the agreed upon commissions and showroom fees, SXS Group has plainly breached the parties' contract.

19. As a direct and proximate result of SXS Group's breach of the parties' contract, Supreme Showroom has suffered and continues to suffer compensatory and consequential damages, in an amount to be proven at trial but which exceed $75,000.00.

20. Additionally, Supreme Showroom respectfully requests that the Court issue an order for specific performance, requiring SXS Group to pay Supreme Showroom all commissions on future bookings, earned by Supreme Showroom, under the parties' contract as they come due.

## COUNT II.
## VIOLATION 820 ILCS §120/1, et seq.

21. Supreme Showroom reasserts each and every factual allegation stated in all prior complaint paragraphs, as if they were fully restated herein.

22. Supreme Showroom is a "sales representative" as that term is defined by 820 ILCS §120/1(4).

23. SXS Group is a "principal" as that term is defined by 820 ILCS §120/1(3).

24. The monies due from SXS Group to Supreme Showroom constitute "commissions" as that term is defined by 820 ILCS §120/1(1).

25. Presently, SXS Group owes commissions to Supreme Showroom on sales of its products in an amount in an amount to be determined at trial, but which will exceed $75,000.00.

26. By its action, SXS Group has willfully violated the prompt commission payment mandate of 820 ILCS §120/2.

27. As a direct and proximate result of SXS Group's violation of Illinois law, Supreme Showroom has suffered damages, in the form of unpaid commissions, statutory exemplary damages, costs and attorneys' fees, in an amount to be proven at trial, but which will exceed $75,000.00.

## COUNT III.
## VIOLATION OF N.Y. LABOR LAW §191a-191c.

28. Supreme Showroom reasserts each and every factual allegation stated in all prior complaint paragraphs, as if they were fully restated herein.

29. Alternatively, Defendant's conduct also represents a clear violation of N.Y. Labor Law §191a-191c.

30. At all times relevant to this matter, Supreme Showroom has been a "sales representative" as that term is defined by New York Labor Law §191-a(d).

31. At all times relevant to this complaint, SXS Group has been a "principal" as that term is defined by New York Labor Law §191-a(c).

32. SXS Group's failure and refusal to pay Supreme Showroom the commissions it has and will earn on sales of Defendant's products constitutes not only a breach of the parties' contract but also a violation of the prompt payment requirements of New York Labor Law §§191-b(3) and 191-c.

33. As a direct and proximate result of SXS Group's violation of New York law, Supreme Showroom has suffered compensatory and consequential damages, in an amount to be proven at trial, but which will exceed $75,000.00, per New York Labor Law 191-b.

34. Additionally, Supreme Showroom is entitled to and should properly be awarded the mandatory statutory penalty from SXS Group, for its violation of New York law, in an amount equal to the commissions sought by this action plus its costs and attorneys' fees, all in an amount exceeding $75,000.00, per New York Labor Law §191-c.

**WHEREFORE,** Supreme Showroom respectfully requests that the Court enter an order for judgment in its favor for the following relief:

1. An award of compensatory and consequential damages to Supreme Showroom from SXS Group, on all counts of the complaint, in an amount to be determined at trial, but which will exceed $75,000.00.

2. An order for specific performance, requiring SXS Group to pay Supreme Showroom future earned commissions on pending sales to its customers, as those commissions become due.

3. An award of Supreme Showroom's costs, disbursements, statutory prejudgment interest, attorneys' fees and statutory penalties as allowed by 820 ILCS §120.3 or otherwise provided by the law.

4. Alternatively, an award of Supreme Showroom's costs, disbursements, statutory prejudgment interest, attorneys' fees and statutory penalties as allowed by N.Y. Labor Law §191a-191c, or as otherwise provided by law; and

5. Such further additional relief as the Court deems just and reasonable.

Respectfully Submitted,

Dated: June 30, 2016

**TARTER KRINSKY & DROGIN LLP**

By: *s/ Jonathan E. Temchin*
Laurent S. Drogin (LD 4770)
Jonathan E. Temchin (JT 7609)
ldrogin@tarterkrinsky.com
jtemchin@tarterkrinsky.com
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

**D. CLAY TAYLOR P.A.**
D. Clay Taylor (*pro hac vice* to be applied for)
clay@replawyer.com
7300 Metro Blvd., Suite 350
Edina, MN 55439
(612) 904-7376

***ATTORNEYS FOR THE PLAINTIFF SUPREME SHOWROOM, INC.***